| 16 | 423 |
| 87 | 381 |

## CORNWALL v. CULVER et al.

THE grant from Alvarado to Sutter, of June, 1841, passed to Sutter a title to the land it embraces, subject to be defeated by the subsequent action of the Supreme Government and Departmental Assembly, and carried with it a right to the possession, use, and enjoyment of the land, which right can be asserted in our Courts.

Such grant passed a present and immediate interest to the grantee in the quantity of land specifically designated—eleven leagues—to be surveyed and laid off within the exterior limits of the general tract designated in the grant, by the officers of the Government.

The land upon which the city of Sacramento is situated, is within the exterior limits of the grant to Sutter, of June 18th, 1841.

*Morton* v. *Folger*, (15 Cal. 275) holding that the deposition of a surveyor, who ran the boundary lines of a grant, taken in one action, is admissible in another action between different parties, after his death, as *hearsay evidence* of the location of such lines, affirmed.

Circumstances under which the deposition of Vioget, now deceased, as to the boundary lines of the Sutter grant is admissible, stated.

*Morton* v. *Folger*, (15 Cal. 275) holding the declarations, on a question of boundary, of a deceased person who was in a situation to be acquainted with the matter, and who was, at the time, free from any interest therein, to be admissible, whether the boundary were one of general or public interest, or were one between the estates of private proprietors, affirmed.

*Ferris* v. *Coover*, (10 Cal. 589) holding that the map or plat referred to in the grant to Sutter must be regarded, for the purpose of identifying the land, as part of the grant itself; that the description given in the grant was to be taken in connection with the lines marked on the map, and if any portion was to be rejected, reference would be had to the circumstances under which the grant was made, and the intention of the parties, and to ascertain these, parol evidence was admissible, and that such portion would be rejected, and such construction adopted, as would give effect to that intention, affirmed.

In ejectment for land in Sacramento county, claimed under Sutter's grant, the grant by Micheltorena to Leidesdorff, in October, 1841, is competent evidence to show that the tract of country now embraced by that county is included within the boundaries of the grant to Sutter.

For land within the boundaries of the general tract granted to Sutter, in the county of Sacramento, ejectment will lie directly upon the grant, although no official survey and measurement has yet been made by the officers of Government, and although it may appear, when such survey and measurement are made, that there exists, within the exterior limits of the general tract, a quantity exceeding the eleven leagues.

Until such official measurement, no individual can complain, nor be permitted to determine, in advance, that any particular locality will fall within any surplus over and above the specified quantity, and thereby justify its forcible seizure and detention by himself.

The evidence in this case, showing that the land within Sacramento county was in possession of Sutter, by permission of the former Government, for years previous to the cession to the United States ; that it was subjected by him to such uses as he desired; that he had absolute control over it, without disturbance by any one, exercising the rights of a proprietor, to the knowledge of the Government, and with its recognition of their existence; that he asserted ownership of the land, under the grant from Alvarado, and that for years after the conquest and treaty, his claim and possession were unquestioned; his title, whether it be regarded as a legal or equitable one, is sufficient, under these circumstances, to enable him, and those holding under him, to recover or maintain possession, in the Courts of the State, at least until the United States intervene, and determine, through the appropriate departments, that his claim, under his grant, shall be satisfied by land elsewhere selected.

Cornwall v. Culver.

The words in the petition of Sutter—"not including, in said eleven leagues, the land which is periodically inundated with water in winter," and the words in the grant, "without including the lands inundated by the impulse and currents of the rivers," mean the land which is regularly inundated during the winter, and refer only to what are known as *tule lands.* No other lands will meet the terms of the petition.

APPEAL from the Sixth District.

The particular facts, further than as they appear in the opinion of the Court, are not necessary to be stated. They were, substantially, the same as presented in the case of *Ferris* v. *Coover* (10 Cal. 589). The Court below seemed to think that case did not cover this in all respects, and accordingly instructed the jury, in substance, among other things, that if the boundaries of the grant, as explained by the map, contained more than eleven leagues of land, the grant was a floating grant, or one of a non-located character, and if the eleven leagues had not been surveyed and located by the proper officers of Government, ejectment could not be maintained for any portion of the land granted.

The land in controversy was about a half mile south of Sutter's fort, in Sacramento county.

Verdict for defendants; judgment accordingly; plaintiff appeals.

*Clark & Gass,* for appellant, cited *Ferris* v. *Coover,* 10 Cal. 589; *Morton* v. *Folger,* 15 Id. 275; *Seaward* v. *Malotte,* Id. 304; *Sutter* v. *United States,* 21 How. 170, as conclusive upon all the material questions in the case.

*Bowie & Griffith,* for Respondents.

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

This is an action of ejectment, to recover the possession of certain premises situated in the county of Sacramento. The plaintiff deraigns his title from a grant of the former Mexican Governor, Alvarado, to John A. Sutter, bearing date on the eighteenth of June, 1841. This grant was the subject of extended consideration by this Court, in the case of *Ferris* v. *Coover,* decided at the October term, 1858 (10 Cal. 614). We there held that it passed to Sutter a title to the land it embraces, subject to be defeated by the subsequent action of the Supreme Government and Departmental Assembly; that it carried with it the

28

right to the possession, use, and enjoyment of the land; that this right could have been enforced under the former Government, and was protected, like any other right of property, by the stipulations of the treaty of Guadalupe Hidalgo, and could be successfully asserted in our own Courts. Indeed, it is a matter of surprise that there ever was any serious question as to the right of Sutter, or those claiming under him, to recover possession by virtue of the grant itself. The grant was subject to the conditions of cultivation and occupancy, by the Mexican regulations of November 21st, 1828, and a compliance with these conditions was required to avoid a denouncement and a possible forfeiture of the land, and it is well known that such compliance is considered as a most material circumstance in cases of this kind, by the United States Courts, in determining the right of Mexican grantees to a recognition and confirmation of their claims.

We do not propose to consider the several objections taken to the ruling of the District Court by the appellant. We shall confine our attention to those, the determination of which may serve as a guide for the disposition of the case on another trial, and the disposition of other cases of a similar character in the county of Sacramento.

The validity of the grant is not questioned. There is, indeed, no doubt of its validity. It has been held valid by the highest tribunal of the United States, upon a direct issue on that point. It passed a present and immediate interest to the grantee in the quantity of land specifically designated—eleven leagues—to be surveyed and laid off, within the exterior limits of the general tract designated in the grant, by the officers of the Government. Whatever doubts may have once existed upon the question, whether the land upon which Sacramento is situated is included within those limits, there can be none since the decision of the Supreme Court of the United States in the Sutter case. In *Ferris* v. *Coover* we held that the map or plat referred to in the grant was to be regarded, for the purpose of identifying the land, as part of the grant itself, as much so as if incorporated into it; that the description given in the grant was to be taken in connection with the lines marked on the map, and if any portion was to be rejected, reference would be had to the circumstances under which the grant was made, and the intention of the parties; and to ascertain these, parol evidence was admissible, and that such portion would be rejected, and such construction adopted, as would give effect to that intention. We further held, that the evidence of Sutter and Vioget, given in that case,

removed nearly all the difficulties arising from inaccuracy of description; that it established, as the southern line, the one marked on the map a few miles south of the American river, and showed the cause of the erroneous designation of the latitude, not only of the southern, but of the northern line; the circumstances under which the land was petitioned for, and the grant made, and the intention of the parties, and fixed the identity of the establishment of New Helvetia, with the settlement of which Sutter's fort was the head.   We have seen nothing since which has created a doubt of the correctness of the views we there expressed, but, on the contrary, much to strengthen and confirm them.   In the case of *The United States* v. *Sutter,* (21 How. 171) Mr. Justice Campbell, who delivered the opinion of the Supreme Court, speaks of the settlement formed by Sutter " near the junction of the Sacramento and American rivers, which he designated New Helvetia," and after referring to the map which accompanied the grant, and the traced copy, made by Vioget, produced and filed with the petition of the claimant before the Land Commission—the original having been lost—says : " With this map, we have no difficulty in locating the grant so as to include New Helvetia.   Without it, the question would be, whether the general description of New Helvetia should overrule the particular description by metes and bounds, contained in the third condition ; for it is ascertained that the exact position of the line of latitude, which determines the southern boundary, lies twenty miles north of the principal establishment.   But the map shows that the line of the southern boundary is south of New Helvetia, and is so related to natural objects represented on it, as to be easily determined.   Vioget accounts for the error in the designation of the line, by the imperfection of the instruments, and proves that a starting corner was fixed, and the line traced on the ground.   *This is better evidence of the true location of the southern line, and conforms to the probabilities of the case.*"

Since the deposition of Vioget, used in *Ferris* v. *Coover,* was taken, Vioget has died, and, in the present case, the plaintiff offered to read his deposition, taken in 1850, in a different action, between different parties, to establish the exterior lines of the survey ; or, in other words, the position of the southern and eastern lines of the grant within Sacramento county.   The deposition, thus offered, was taken in an action brought for the possession of lands within the city of Sacramento, in which the plaintiff deraigned his title, as in the present case, from the grant to Sutter.   In it Vioget testifies, among other things, in substance,

that he prepared the map annexed to the petition of Sutter, at the latter's request; that he made an actual survey of that portion of the tract which lies within the present county of Sacramento; and gives the lines which he ran for the southern and eastern boundary. The deposition offered was excluded, and the question is thus presented, whether the deposition of a surveyor, who ran the boundary lines of a grant, taken in one action, is admissible in another action, between different parties, after his death, as *hearsay evidence* of the location of such lines. This is the precise question determined in the recent case of *Morton* v. *Folger*, decided at the January term. The question is one of great practical importance in this country, and was the subject of careful consideration in that case. We there held, after a full examination of the authorities, that the declarations, on a question of boundary, of a deceased person, who was in a situation to be acquainted with the matter, and who was at the time free from any interest therein, were admissible, whether the boundary were one of general or public interest, or were one between the estates of private proprietors; and that, this being so, their admissibility could not be affected by the fact that they were reduced to writing, and were made under the solemnity of an oath in a judicial proceeding; but that these circumstances, if they were allowed any weight, would augment the confidence reposed in the accuracy of the declarations. We repeat and affirm this conclusion; and it follows that the Court erred in excluding the entire deposition offered. So much of it should have been received as related to the lines of the boundaries surveyed.

The grant issued to William A. Leidesdorff by the Mexican Governor of California, Micheltorena, on the eighth of October, 1844, and the accompanying map, were properly admitted. The tract of land that grant purports to transfer is situated on the south bank of the American river, and is described, as " bounded by the land granted to the colony of Señor Sutter." Upon the accompanying map, the establishment of New Helvetia is designated as occupying about the true position of Sutter's Fort; and the dividing line, separating the tract from the establishment, is delineated as running southwardly from the American river.

This grant is legitimate evidence, that the tract of country now embraced by the county of Sacramento is included within the boundaries of the grant to Sutter, furnished by the highest public officer of California succeeding Alvarado, and to whose charge the disposition of

the public domain of the Republic in this Department was especially entrusted.

For the land, thus shown to be within the boundaries of the general tract granted to Sutter, in the county of Sacramento, ejectment will lie directly upon the grant; and it is no objection to a recovery, that an official survey and measurement have not as yet been made by the officers of the Government; and that it may possibly appear, when such survey and measurement are made, that there exists, within the exterior limits of the general tract, a quantity exceeding the eleven leagues. If there be such excess, it is for the Government to survey and lay it off. The grant contemplates the possibility of an excess, for in its fourth condition it expressly reserves any surplus, found upon the official measurement, above the specified quantity, for the benefit of the nation. Until such measurement, no individual can complain, much less can he be permitted to determine, in advance, that any particular locality will fall within the supposed surplus, and, thereby, justify its forcible seizure and detention by himself. If one person could, in this way, appropriate a particular parcel to himself, all persons could do so; and thus the grantee, who is the donee of the Government, would be stript of its bounty, for the benefit of those who were not in its contemplation, and were never intended to be the recipients of its favors.

The evidence in the record shows that the land within the county of Sacramento was in the possession of Sutter, by the permission of the former Government, for years previous to the cession of the country to the United States; that it was subjected by him to all such uses as he desired; that over it he had absolute control, without disturbance by any one, exercising the rights of a proprietor to the knowledge of the Government, and with its recognition of their existence; that he asserted ownership to the land under the grant from Alvarado, and that for years after the conquest and treaty, his claim and possession remained unquestioned. His title, whether it be regarded as a legal, or an equitable one, is sufficient, under these circumstances, to enable him, and those holding under him, to recover or maintain possession in the Courts of the State, until, at least, the United States intervene and determine, through the appropriate departments, that his claim, under his grant, shall be satisfied by land elsewhere selected. Thus far, the United States have given no countenance to any intrusion upon this land; but, on the contrary, have expressly forbidden the assertion of any preëmptive rights to it, or to any lands similarly situated.

Cornwall *v.* Culver.

There is some evidence in the record in relation to overflowed lands, which was probably introduced in consequence of the reservation of such lands from the grant, though its necessity, as the case was presented in the Court below, we do not clearly perceive. But as the matter may be again referred to on another trial, and as it is desirable that there should be some end to the present controversy, and other controversies of a similar character, with respect to the land claimed under the grant to Sutter in Sacramento county, it will be well to look with some care into the nature of this reservation. The petition of Sutter is for eleven leagues, " not including in said eleven leagues the land which is periodically inundated with water in winter." The grant is for eleven leagues " without including the lands inundated by the impulse and currents of the rivers." The language of the grant was probably intended as a compliance with the terms of the petition, and has, as we conceive, but one meaning, and that is, to exclude lands which are inundated *during the winter,* and does not apply to lands which are occasionally flooded upon a rise of the rivers, either from protracted rains in the winter, or the melting of the snows of the Sierra Nevadas in the spring. The whole country within the exterior limits of the grant, with the exception of small portions entirely insufficient to meet the quantity specifically granted, is sometimes flooded in this way. The most valuable tracts, both for cultivation and pasturage, are the low lands bordering the streams, over which every two or three years the water rests for a few days at a time. It was these lands which any one in the position of Sutter, at the time he presented his petition to the Government, would naturally have selected, and these lands the survey actually made by Vioget, both on the Sacramento and the Feather rivers, included. As we read the petition of Sutter, he solicits the eleven leagues excluding the land which is periodically in the winter inundated, that is, the lands which are regularly inundated during the winter, and refers only to what are known as *tule lands.* No other lands will meet the terms of the petition. These lands are regularly, periodically, every winter, inundated. The low lands, which are not tule lands, not thus inundated every winter, but only occasionally—often at intervals of three and four years. The tule lands remain, too, inundated to a greater or less extent during the entire winter and spring—until the waters of the Sacramento and Feather rivers subside to their lowest point. The least rise from the first rains of much length in the winter cover them with water. They are unfit

for cultivation without draining.   Within the exterior limits of the grant to Sutter there is an immense tract of these tule lands, and it is to them that the reservation applies.   All evidence relating to other lands than those of this character is irrelevant and inadmissible, and should be excluded on another trial.

The judgment must be reversed and the cause remanded; and it is so ordered.