Thornton v. Mahoney et als.

---

ROBERT S. THORNTON v. DAVID MAHONEY, GEORGE BLISS, JOHN O'CONNOR, AND SOLOMON A. SHARPE.

PRESUMPTION AS TO CHARACTER OF MEXICAN GRANT.—Where a specific quantity of land has been confirmed to a grantee claiming under a Mexican or Spanish grant or to his assigns, and a survey has been made of the quantity confirmed, which survey has been set aside by the United States District Court, the presumption is that the grant was of a specific quantity to be selected and segregated within the area of a larger tract.

RIGHT TO POSSESSION OF MEXICAN GRANT.—A grant by the Mexican or Spanish Government of a specific quantity of land within the area of a larger tract, gave to the grantee such an interest in the entire tract as entitled him to the right to its exclusive possession, as against all persons except those having an interest in or right to the possession of the same, or some part of it, under the Government, until such time as the Government segregated the quantity granted from the general tract.

SAME.— Until the Government of the United States restricts the possession of those claiming under a Mexican or Spanish grant, by a segregation and location of the quantity granted, the grantee or his successor in interest is entitled as against third persons without title to the possession of all of the land within the exterior boundaries described in the grant.

SAME—PENDING APPEAL FROM ORDER CONFIRMING SURVEY.—If a grant has been confirmed, and a survey of the quantity confirmed has been made by which it has been located within the exterior boundaries of the larger tract mentioned in the grant, and an appeal has been taken from an order confirming the survey, the grantee or his assignee is entitled to the possession of all the land within the exterior boundaries of the grant until the final determination of the appeal.

STAY OF PROCEEDINGS PENDING SUCH APPEAL.—A bond to stay proceedings is not necessary in order to perfect an appeal from a decree of the District Court of the United States approving of a survey of a Mexican or Spanish grant.

ENFORCEMENT OF DECREE PENDING APPEAL.—One who appeals from a decree in his favor in order to obtain a decree for a larger sum, cannot, pending the appeal, carry into execution the decree.

SAME.—An appeal duly taken to the Court of last resort suspends all proceedings in the Court below.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

72

The facts are stated in the opinion of the Court.

*J. B. Crockett,* for Appellant.

In support of the appeal I rely on the following propositions, to wit:

1. That the approved survey is a *final location* of the respondents' claim in the sense contemplated by the Act of April 26th, 1858. (Wood's Dig. 1047.)

2. That the said Act is not unconstitutional and void.

If these propositions can be maintained, the appellant is entitled to recover.

The first proposition renders it necessary to consider the Act of Congress of June 14th, 1860. (12 Statutes at Large, 33.) By the fifth section of that Act it is provided in substance, that the survey, when determined by the District Court by its decree, shall have the same effect and validity in law as if a patent for the land had been issued by the United States. The fair and just construction of the entire Act is, that after the survey has progressed to the point when it is approved by a final decree of the District Court, it is thenceforth to be deemed a final location and to have the force of a patent. The policy of the Act is obvious. It authorized the District Court to review all surveys made by the Surveyor-General, and for the first time provided a method by which adverse claimants, and even settlers claiming under the Government, could be heard in respect to the survey. Before then, the proceedings were entirely *ex parte.* When the survey was approved by the Surveyor-General, it was forwarded to the Land Office, and the patent issued. But, by this Act, the survey could be ordered into the District Court on the motion of the Government or of any adverse claimant, proofs were to be taken, and the Court was to enter its decree rejecting, modifying, or approving the survey. When all this was done, and the Court by its final decree approved the survey, the obvious intention was, to give to the decree the effect of a patent, so long as it remained in force. The very language of the Act admits of no other interpretation, when it declares " the said plat and

survey so finally determined by publication, order, or decree, as the case may be, shall have the same effect and validity in law as if a patent for the land so surveyed had been issued by the United States."

Nor is the decree any the less final, in the sense of the Act, because it is subject to appeal. The precise object of the Act was to avoid the delay arising from appeals and from other causes which might retard the issuance of the patent. Hence, it provides that after all parties have had a chance to be heard in the District Court, its decree approving a survey shall be equivalent to a patent. As long as that decree remains in force it is to be accepted as final by all parties in interest. The claimant is concluded by it until reversed; and, on the other hand, he is protected by it as fully as by a patent. The fact that it is subject to appeal does not impair its effect as a final decree, so long as it remains in force. This branch of the case resolves itself into a simple question of intention, to be deduced from the face of the Act. When it provides that a final decree approving the survey shall have the force of a patent, does it mean a decree of the District Court, from the time it was rendered, or does it mean a decree which has become absolutely conclusive, because no appeal has been taken within the prescribed term. I insist that the first is the correct interpretation, and that the decree is final, in the sense of the Act, from the time it is rendered until reversed or set aside.

If I am right in this, the next question which arises is, whether or not such a decree is a final location of the land in the sense of the Act of the Legislature of April 26th, 1858. (Wood's Dig. 1047.) If the decree so long as it remains in force has the effect of a patent, then it is a final location in the sense of our statute. The claimant is under a bar from claiming or asserting title to any lands outside of the survey so long as the decree remains in force. As to him, it is conclusive until reversed. The policy of our Act is to limit the claimant to the precise land which has been set apart to him by a final survey, and to conclude him by any survey which,

as between himself and the Government, has the force of a patent. If, therefore, the survey in this case is so far conclusive in favor of the claimant as that he could maintain ejectment upon it, treating it as a segregation of his land, it must follow, on the other hand, that he is concluded by it, and could not maintain ejectment for any land outside of it. If Mahoney were not in possession and was prosecuting an ejectment to recover all the lands within the exterior boundaries of his grant, would not the decree of the District Court, approving the survey of his half league, be a valid defense as to all the lands not included in the survey? In other words, is the Court prepared to hold that a party entitled to a smaller quantity, to be located within a larger area, can maintain ejectment to recover all the land within the exterior limits, nothwithstanding that the quantity confirmed has been located by an official survey approved by the District Court? The Court has pushed the doctrine in favor o.ᶜ the claimant to the utmost verge in holding that in *advance* of a final survey he can recover all the lands within the exterior limits of the grant. But I apprehend that the Court would hesitate long before holding that after an official survey, approved by the District Court, the claimant could nevertheless recover in ejectment the lands outside of the survey.

On the same principle I claim that Mahoney is estopped by the survey in this action. As to *him* the survey is conclusive of the extent and location of his claim, so long as it remains in force. Until the decree approving the survey is set aside, he is under a bar in respect to all lands not included in it. He is absolutely estopped by it whilst the decree remains in force. I insist, therefore, that, in the sense of our statute, Mahoney's claim has been "finally located" so as not to include the land in contest.

If, on the appeal, the survey shall be set aside and a new survey ordered, so as to include the lands in dispute, Mahoney's right will attach to the new location. But so long as the decree approving the survey remains in force, he can claim no lands outside of it; and having evicted the appellant under

his judgment in ejectment, he should restore him to the possession.

*T. J. Bergin*, for Respondents.

A correct conclusion upon the question of construction involves the consideration of the nature of the several Acts of Congress in relation to Mexican land claims in California. (Act of March 3, 1851—Bright's Dig. 111—and the Acts amendatory thereof; Act of June 14, 1860—12 U. S. Stat. at Large, 33.)    These Acts were passed in discharge of the treaty obligations the Government had assumed.    (Wood's Dig. p. 20, Art. VIII.)    They are to be largely and liberally construed in furtherance thereof.    The duty in performance of which they were enacted, was one binding upon the United States independently of all treaty; the treaty simply superadds to such obligation the pledge of the faith and honor of the Government to the sacred discharge thereof.

Nor should the subsequent changes that have supervened in the ownership of these lands induce any different construction thereof from that which these Acts would have received at the hands of the Court had the title to the lands remained still vested in the original claimants.    (*Wilson* v. *State of New Jersey*, 7 Cr. 164.)

The final decree of the District Court is final *quoad* that Court, but certainly not absolutely and in all events final, else the appeal therefrom expressly allowed would not lie.    The final decree, therefore, of the District Court in this case, as contemplated by the law, is simply and only final *sub modo*. There can be no absolute finality until all legal means of reversal are exhausted; it is only when there no longer remains any power to either party to the proceeding to question the same, that it can, strictly and properly, be said to be absolutely final.    This can only be upon the issuance of the patent.    (*Johnson* v. *Van Dyke*, 20 Cal. 225 ; *Castro* v. *Hendricks*, 23 How. 430; *United States* v. *Sempeyerac*, 7 Pet. 222; *Davis* v. *Ballard*, 1 J. J. Marsh. Ky. 564.)

In *The United States* v. *Sempeyerac*, already cited, a case of

confirmation of land claim, upon proceedings analogous to those had in regard to California land claims, the claim was finally confirmed by the decree of the Court; yet, three years thereafter, Congress passed an Act to re-open the case on the part of the United States, and upon the proceedings thereupon had the claim was rejected. An appeal therefrom was taken to the United States Supreme Court, and that Court sustained the action of Congress and the inferior Court, and affirmed the decree finally rejecting the claim.

In *Davis* v. *Ballard,* cited above, the time for suing out a writ of error, according to the law in force when the judgment was rendered, had elapsed, and the judgment thus become final. Davis, after lapse of the statutory time, sued out a writ of error to reverse the judgment. Ballard pleaded in bar thereto, that it was brought and sued out after the expiration of and not within three years next after the judgment was rendered in the inferior Court. In answer to this, Davis set up a certain Act of the Legislature of Kentucky, the second section of which declared "that in writs of error already sued out, or that may hereafter be sued out, that the period between the thirty-first day of November, 1824, and the first day of April, 1827, shall be deducted from the time allowed by law in any plea, motion, or suit in which the plea of the Statutes of Limitations of writs of error may be plead or relied;" under which provision the writ was, of course, brought in time, if the Act thus making the deduction were valid. The Court, after elaborately examining the question, sustained the Act, and held the writ of error well brought.

These authorities clearly show the power of the United States over these proceedings in regard to these land claims, and it is absurd to contend, while the United States have such ample powers in the control thereof, that they are or can be finally and absolutely conclusive on them; and it is equally absurd and unjust to hold the claimant bound where the United States are not. These authorities, it is apprehended, abundantly prove, independently of all reasoning *a priori,* that there can be no final location, within the true intent and

meaning of the legislation of Congress and of the State of California, until the issuance of a patent. The error and injustice of any other construction will at once be manifest if it be considered that the final decree of the United States District Court already rendered in the matter of the survey of these lands may, upon the pending cross appeals to the United States Supreme Court, be reversed, and a new survey ordered in which the premises here sued for may be included; and must the respondents again sue for the recovery thereof, and in the meantime submit to be deprived of their lands, pay enormous damages, and be harassed with incessant litigation? The same course of proceedings may have to be repeated an indefinite number of times. How will such a course comport with the solemn pledge of the faith and honor of the United States to the protection of the claimants to these lands? Were the Government itself to do such a thing directly, it would meet with the reprobation of all men, and must forever tarnish its faith and honor. Yet, the result is practically the same to the claimants, if by misconstruction of the legislation of Congress, they are to be thus stript of their property and vexed with interminable litigation? It would, too, be clearly in conflict with the repeated and uniform decisions of this Court as to these claimants' rights under Mexican grants. (*Mahoney* v. *Van Winkle*, 21 Cal. 527; *Lambertson* v. *Hogan*, 2 Barr, Penn. 22; *Norman* v. *Heist*, 5 Watts & Sergt. 171.)

There is, therefore, no final location, within the true intent and meaning of the statute. This is one of the primary and essential elements of the appellant's right to recover herein. The right to recover is derived solely from the statute, and can, therefore, only arise upon the contingency therein named.

By the Court, CURREY, J.

In May, 1861, David Mahoney commenced an action of ejectment in the District Court of the Twelfth Judicial District against Robert S. Thornton and others, for the recovery of the possession of a certain tract of land situated in part

in the County of San Francisco, and part in the County of San Mateo, called "Laguna de la Merced." In June, 1862, Mahoney obtained a judgment in that action against certain of the defendants therein, among whom was the said Thornton, and subsequently, in June, 1863, Thornton was ejected from the land in controversy in this action and Mahoney was placed in possession thereof by the Sheriff, acting under and by virtue of an execution issued on said judgment.

This is an action of ejectment by said Thornton as plaintiff against said Mahoney and George Bliss, John O'Connor, and Solomon A. Sharpe, as defendants, commenced in August, 1863, for the recovery of the possession of the parcel of land, consisting of about one hundred and twenty acres, from which the plaintiff was ejected under Mahoney's judgment, and for the recovery also of damages which he sustained by reason of being put out and deprived of such premises.

The plaintiff bases his right to recover on the Act of the Legislature of this State, passed in 1858, entitled "An Act for the better protection of settlers on public lands in this State, and to secure the rights of parties in certain cases," (Laws of 1858, p. 345); and to show that his case comes within the provisions of this Act, the plaintiff, by his complaint, states the facts essential to the maintenance of his action under it. The most of these facts are admitted by the defendants in their answer. The defendants further answer, stating affirmatively facts in avoidance of the effect of the matters alleged by the complaint. The plaintiff, by stipulation, admitted certain of the matters so pleaded by the defendants, and the cause was submitted to the Court upon the pleadings and this stipulation for judgment.

The facts of the case, as submitted, are briefly and substantially as follows: In 1835, a grant of half a league of land, called the "Rancho Laguna de la Merced," was made by the Mexican Government to one Antonio Galindo, who immediately thereupon entered upon the land and built a house and corral thereon, and with his family lived upon the same, using it for the purposes of cultivation and grazing. Afterwards

Galindo conveyed the property to Francisco de Haro, who moved into the house already erected, and while in possession built several houses on the rancho, and there resided, using the land for cultivation and grazing, until he died in 1848 or 1849. The heirs of De Haro presented their claim for the half league granted to the Board of Land Commissioners, appointed under the Act of Congress passed in 1851, entitled "An Act to ascertain and settle the private land claims in the State of California," for confirmation, and their claim was afterwards finally confirmed to them. Some time since the confirmation, the defendant Mahoney and one James G. Denniston acquired the right, title, and interest of the confirmees in said rancho. The premises demanded in this action are a portion of the Laguna de la Merced.

At the time Mahoney commenced his action against Thornton and others, an official survey of the land confirmed to De Haro's heirs had been made by the United States Surveyor-General for California, and had been approved by him at the time of the trial of that action, and was then pending in the United States District Court on exceptions filed against the survey and location on behalf of the Government. After Thornton had been ejected and removed from the parcel of land in controversy, the United States District Court rejected and set aside the said survey, and ordered a new survey of the lands to be made. Accordingly, another official survey was made and approved by the Surveyor-General, and by him returned to the United States District Court for its approval. This survey, which excluded the premises now in dispute, was afterwards, and before this action was commenced, approved by the same Court. After this, the United States as a party, and Mahoney and Denniston as claimants of the rancho, respectively appealed from the decree approving the last named survey to the Supreme Court of the United States, which appeals, at the time of the trial, were pending and undetermined.

When the plaintiff was ejected from the premises, he had growing crops on the land of the value of two thousand five

73

hundred dollars, which Mahoney converted to his own use. In his defense to the action of Mahoney against him, the plaintiff herein expended nearly nine hundred dollars, and by reason of being ousted sustained other loss and damage to the amount of five hundred dollars, besides the loss of the use of the property, which was of the value of one hundred dollars a month. Mahoney has remained in possession of the demanded premises since the plaintiff Thornton was ejected therefrom.

To the answer of the defendants, the plaintiff demurred on several grounds. The demurrer was overruled, when the parties submitted the case upon the pleadings and the stipulation to the Court for its judgment, and the Court rendered a judgment in favor of defendants, and from this judgment the plaintiff has appealed.

The appellant by his counsel alleges that upon the facts admitted by the pleadings and stipulation, the plaintiff was entitled to judgment for the restitution to him of the demanded premises, and for the damages sustained by him by reason of his removal therefrom, and therefore he says the Court erred in giving judgment in favor of respondents against appellant.

The position thus taken on behalf of the appellant presents for consideration the effect of the survey in question as a final segregation of the half league of land to which Mahoney and Denniston became entitled as successors in interest of the confirmees of the Rancho Laguna de la Merced.

From the facts of the case it is to be inferred that the half league granted to Galindo was not so located by the grant itself as to render it entirely certain as to the limits and boundaries of the quantity designated, though the Court, in *Mahoney* v. *Van Winkle*, 21 Cal. 576, speaks of this particular grant as one for a specific tract of land, and distinguishes it from that class of grants which are " of mere quantity within vague and undefined boundaries." But from the record before us we are compelled to consider it a grant of a half league of land, the boundaries of which it was necessary to ascertain

by official measurement or segregation before the quantity granted could become located, and the grant itself could become attached to a specific tract of land.    For this purpose it may be presumed the survey was made, and it may also be presumed that the parties contesting by appeal the correctness of the survey and its approval by the District Court, deemed it within the power of the Government to confirm it or set it aside and require the land to be otherwise surveyed and located.    If the grant had been of a defined tract, the survey might not have been necessary, except for the purpose of ascertaining the courses and distances of its boundaries, with a view of furnishing a description of it to be embodied in the patent to be issued ; and in such case it can hardly be supposed any controversy could have arisen respecting the location made by the Government surveyor.    We shall therefore regard the grant as of a half league of land within an area larger in extent than this designated quantity.

By the laws and customs of the former Government the segregation and location of the specified quantity granted was required to be made by an officer of the Government.    The laying off and segregation of the land from the general area was a part and perhaps the most important part of the ceremony of the judicial delivery of possession to the grantee. Where the quantity designated was to be carved out of a larger tract, the judicial measurement and location of such quantity was necessary in order to invest the grantee with a perfect title to a specific portion of the general tract.    Until this duty was performed by the Government, the title of the grantee was inchoate and imperfect, consisting of a mere right and interest existing in solemn contract or obligation on the part of the Government to set apart to the grantee so much of the land within the general description as the Government designed by the .terms of the grant to cede to him.    (*United States* v. *Fossat,* 20 Howard, 426 ; *Fremont* v. *United States,* 17 Howard, 558.)

Though the grant of a specified quantity within a territory of larger extent did not confer upon the grantee a title to any

particular and defined portion of the land, still he became invested with such an interest in all the lands of the entire area as conferred upon him the right to its possession, to the exclusion of all persons except those claiming an interest in or right to the possession of the land, or some part of it, under the Government. (*Waterman* v. *Smith*, 13 Cal. 410; *Cornwall* v. *Culver*, 16 Cal. 429; *Riley* v. *Heisch*, 18 Cal. 200–202; *Mahoney* v. *Van Winkle*, 21 Cal. 576, 577.)

Such, undoubtedly, was the right of a grantee under the Mexican Government at the time the grant was made. This seems to accord with the practice of the Mexican authorities in California, and is a logical necessity, if it be admitted that a grantee of a specified quantity within an area of larger extent had the right of entry upon the land before the quantity granted was segregated from the general tract; otherwise, as has been often said by the highest Court in this State, the grantee might and probably would, by continual encroachments, be deprived of every portion of the entire tract.

In *Mahoney* v. *Van Winkle*, 21 Cal. 577, 578, the learned Chief Justice used the following appropriate language on this subject: "If there be a surplus within the designated boundaries of the tract over the specific quantity alleged by the grantee in his petition, or intended to be ceded by the grant, the Government can at any time, by directing its measurement and segregation, restrict the grantee's possession."

"The grantee cannot himself make the measurement and segregation so as to bind Government. He cannot know what particular part of the general tract the Government may assign to him, or what part it may reserve for its own use or offer for sale or settlement. He is, therefore, directly interested, until the official segregation, to protect the entire tract from waste and injury, and to improve it; and until then third persons cannot question his right to the possession of the whole. They have no authority to fix the limits of his possession, under any pretense of a desire or intention to make a settlement upon the surplus which the tract may contain over the specific quantity designated. Lands thus situated are not open

to settlement by the legislation of Congress, but, on the contrary, are expressly exempted therefrom. The determination, therefore, of the limits of the grantee's possession is a matter resting solely between himself and the Government."

The doctrine thus declared is in consonance with the principles of reason and justice, and meets with our approval. It preserves to the party who can justly demand of the Government the fulfilment of its treaty obligations, the right granted to him by the old Government. It cannot be presumed that the Congress of the United States would intentionally do anything to impair the right of the party who may hold an interest in lands thus situated under a grant of the Mexican nation. To deprive him of the use and enjoyment of any portion of it until a segregation of the proper quantity might be made, would subject him to the mercy of every intruder, and consequently would greatly impair, if not entirely destroy, all beneficial use whatever of the portion of the land designed for his benefit. That it was intended in such cases to protect the possessor of a valid claim to a given quantity of land comprehended within limits of a larger extent, which remained to be measured and segregated, the legislation of Congress has sufficiently indicated by withholding lands claimed under a Mexican or Spanish grant from settlement under the pre-emption laws of the Government. Then, until the Government, which alone has the authority to do so, restricts the grantee's possession by a segregation and location of the quantity granted, the grantee, or his successor in interest, must be held entitled, as against third persons without title, to all the lands within the general description of the grant. This rule may be attended with some inconveniences in cases where the amount of land embraced within the general description greatly exceeds the quantity designed to be granted ; but notwithstanding all this, the claimant is entitled to the protection of the law, and as the authority to measure off and locate the exact quantity to which he may be entitled under his grant rests wholly with the Government, third parties must abide the law, and wait for the surplus until the

Government shall have performed its duty to the party interested.

Then, has the Government limited and restricted the owners of the Rancho " Laguna de la Merced " to the area described by the survey now before the Supreme Court of the United States, on the appeals of the Government and the owners of the rancho, respectively? To answer this question, it is necessary to ascertain and determine the effect of the survey in the condition in which we find it at the time this action was commenced. The survey had then been made and approved by the proper Court, and was subject to examination and review by the Supreme Court of the United States, and to be disapproved and set aside by that tribunal. Whether or not appeals from the approval of the District Court had then been taken does not distinctly appear; and perhaps it is of no especial importance to know this fact; the parties agree that appeals had been duly taken by the respondents Mahoney and Denniston, and also on behalf of the Government, at the time the cause was tried, and were then pending and undetermined; and the counsel have argued the case upon the hypothesis that the appeals had been duly taken when the action was commenced—the one insisting that the decree of the District Court approving the survey is final in the sense of the Act of Congress of June 14, 1860, from the time it was pronounced until it shall be reversed or set aside; and the other as earnestly insising that the decree is only final as to the Court which rendered it, and cannot be considered as absolutely final until after the Court of last resort shall have disposed of it, or the matter is no longer subject to the contingency of change.

The Act of Congress (12 Statutes at Large, 33) authorizes the District Court of the United States of the districts of California to order, on proper application, any survey of a private land claim within their respective districts to be returned into the District Court for examination and adjudication; and the same Act provides for the taking of testimony as to any matters necessary to show the true and proper location of the

claim, and requires the Court, on hearing the allegations and proofs of the parties interested, to render judgment thereon ; and if, in its opinion, the location and survey be erroneous, the Court is authorized to set aside and annul the same, or to correct and modify it ; whereupon it is made the duty of the Surveyor-General, on being served with a certified copy of the decree of the Court, forthwith to cause a new survey and location to be made, or to correct and reform the survey and location already made so as to conform to the decree of the District Court, to which it shall be returned for confirmation and approval.  And by the fifth section of the Act it is provided, " that when, after publication as aforesaid, no application shall be made to the said Court for the said order, or when said order has been refused, or when an order shall have been obtained as aforesaid, and when the District Court, by its decree, shall have finally approved said survey and location, or shall have reformed or modified the same, and determined the true location of the claim, it shall be the duty of the Surveyor-General to transmit, without delay, the plat or survey of the said claim to the General Land Office, and the patent for the land as surveyed shall forthwith be issued therefor, and no appeal shall be allowed from the order or decree as aforesaid of the said District Court, unless applied for within six months from the date of the decree of said District Court, but not afterwards; and the said plat and survey so finally determined by publication, order, or decree, as the case may be, shall have the same effect and validity in law as if a patent for the land so surveyed had been issued by the United States."

By implication, at least, any party interested has the right to appeal to the Supreme Court from the order or decree of approval made by the District Court at any time within six months thereafter ; and it appears in this case that the parties in interest have only availed themselves of this right.

The appeals having been perfected, all further proceedings upon the survey and the decree approving it became suspended.  A patent cannot be issued for the land surveyed

until the appeals are disposed of, otherwise the appeals might be wholly ineffectual. It is not the practice for the appellants in cases of appeals from the decree of the District Court approving a survey made under the Act of Congress mentioned, to execute a bond in order to stay proceedings upon the decree, and we apprehend no ·such bond is necessary for the purpose.

In the time of Mr. Chief Justice Hale it was the law of the House of Lords in England, that the presenting of an appeal to that Court of dernier resort suspended all proceedings in the Court below. It is true their jurisdiction was for a long time questioned by the House of Commons, and also by several distinguished Judges, among whom was Mr. Chief Justice Hale himself; but notwithstanding, the jurisdiction of the House of Lords finally became established, and so remained until nearly the beginning of the present century. (Palmer's Practice of the House of Lords, 3 Paige, 381.)

In the case of *The United States* v. *Pacheco,* 20 How. 263, which was a California land case, an application was made on behalf of the defendants to docket and dismiss the appeal under a rule of the Court; and in respect to it, the Court said : " The only effect of docketing and dismissing a case under this rule is to enable a party to proceed to execute his judgment in the Court below. It removes the bar to further proceedings in that Court which the appeal created, and does nothing more." The converse of the rule here laid down is, that while the appeal remained pending it was a bar to further proceedings in the Court below.

In *Taylor* v. *Savage,* 1 How. 285, the Court say : " We are by no means prepared to say that a complainant, after having appealed from a decree in his favor, can be permitted, pending the appeal, to carry into execution the decree which he is seeking to reverse in the appellate Court in order to obtain a decree for a larger sum."

The parties who have appealed from the decree approving the survey, respectively seek to reverse it in the appellate Court, in order to obtain a different survey and location of the

land to which the assignees of the confirmees are entitled by their grant. The appellate tribunal may reverse this decree and set aside the survey which has been approved by the District Court, and the result may be that the land in controversy will eventually be selected by the Government as a portion of the quantity to be assigned to the claimants and granted by the patent yet to be issued. Until this question be disposed of, the plaintiff's action must be considered as premature.

Judgment affirmed.