## VAN REYNEGAN v. BOLTON.

1. Under the Mexican law, when a grant of land is made by the government, a formal delivery of possession to the grantee by a magistrate of the vicinage is essential to the complete investiture of title.  This proceeding, called, in the language of the country, the delivery of juridical possession, involves the establishment of the boundaries of the land granted, when there is any uncertainty with respect to them.  A record of the proceeding is preserved by the magistrate, and a copy delivered to the grantee.

2. Unless the decree of the tribunals of the United States, confirming a claim under such a grant, otherwise limits the extent or the form of the tract, the boundaries thus established should control the officers of the United States in surveying the land.

3. A survey, by a surveyor-general of the United States, of a claim thus confirmed, is inoperative, until finally approved by the Land Department at Washington.

4. Where a quantity of land in California was granted by the Mexican government within a tract embracing a larger amount, in the possession of which tract the grantee was placed, he is entitled to retain such possession until that quantity is segregated from the tract by the officers of the government and set apart to him; and he may maintain ejectment for the whole tract, or any portion of it, against parties in possession claiming under the preemption laws of the United States.

5. Lands claimed under Mexican grants in California are excluded from settlement under the pre-emption laws, so long as the claims of the grantees remain undetermined by the tribunals and officers of the United States.

ERROR to the Circuit Court of the United States for the District of California.

The facts are stated in the opinion of the court.

Submitted on printed arguments by the plaintiffs in error, and by *Mr. B. S. Brooks* for the defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

This is an action of ejectment for the possession of a tract of land situated in the county of Marin, in the State of California. The plaintiff traces title to the demanded premises from the Mexican government through a grant made to one John Reed in 1834, and confirmed by the tribunals of the United States. The defendants, against whom judgment was recovered, held separate parcels of the premises, claiming to be rightfully in possession under the pre-emption laws of the United States.

It appears from the findings of the court that in 1834 the Mexican governor of California, José Figueroa, granted to Reed a tract of land known as Corte Madera del Presidio, bounded by the mission of San Rafael and the port of San Francisco, the quantity being specified in the grant as " one square league, a little more or less, as explained by the map attached to the proceedings " (*expediente*). In the following year, possession of the tract was delivered to the grantee by the proper Mexican officials; and from that time he continued in its possession and enjoyment until his death. The demanded premises are a parcel of this tract. In 1852, the heirs of Reed presented their claim under the grant for confirmation to the board of land commissioners for the settlement of land-titles in California, created by the act of March 3, 1851; and in 1854, by a decree of the board, the claim was confirmed. On appeal to the District Court this decree was affirmed. No further proceedings appear to have been prosecuted by the government, and the confirmation thus became final.

The grant is not set forth in the record; but we must presume that it was in the ordinary form of grants made by former governors of California, under the Mexican colonization law of 1824, as under no other law were those governors empowered to make grants of the public domain. Those grants were some-

times of tracts designated by well-defined boundaries, sometimes of a specified quantity of land lying within exterior boundaries embracing a greater amount, and sometimes of places by name where these were well known; and thus capable of ready identification. All of them were made subject to the approval of the assembly of the department; and, until they received such approval, the estate granted was liable to be defeated. And, when the approval was obtained, there was another proceeding to be taken, which was essential to the complete investiture of title ; and that was, a formal delivery of possession of the property by a magistrate of the vicinage, called, in the language of the country, the delivery of juridical possession. This proceeding involved the establishment of the boundaries of the tract, when there was any uncertainty respecting them. If these were designated in the grant, it required their ascertainment and identification; if they were not thus designated, it required the measurement of the quantity granted and its segregation from the public domain. The regulations prescribed by law for the guidance of the magistrate in these matters made it his duty to preserve a record of the various steps taken in the proceeding, to have the same attested by the assisting witnesses, and to deliver an authentic copy to the grantee.

Ordinarily, the boundaries thus established would be accepted as conclusive by our government. Unless there is something in the decree of confirmation otherwise limiting the extent or the form of the tract, they should control the officers of the United States in making their surveys. It was so held by this court in *Graham* v. *United States*, 4 Wall. 259, and in *Pico* v. *United States*, 5 id. 536.

In the case at bar, the surveyor-general for California disregarded the boundaries established upon the juridical possession delivered to the grantee. He proceeded upon the conclusion that the confirmees were restricted by the decree to one square league, to be measured out of the tract within those boundaries, which exceeded that amount by about fifteen hundred acres. Whether the terms of the decree justified his conclusion is a question upon which it is. unnecessary for us to express an opinion. That is a question which must, in the first instance, be determined by the Land Department in carrying the decree

into execution by a survey and patent. It is sufficient for the present case that the survey made was contested by the confirmees, and the contest was undetermined when this action was tried. Until finally approved, the survey could not impair their right to the possession of the entire tract as delivered by the former government to the grantee under whom they claim. Until then, it was inoperative for any purpose. Even if the limitation to one square league should ultimately be held correct, that square league might be located in a different portion of the tract by direction of the Land Department, to which the supervision and correction of surveys of private land-claims are intrusted. The confirmees could not measure off the quantity for themselves, and thus legally segregate it from the balance of the tract. The right to make the segregation rested exclusively with the government, and could only be exercised by its officers. Until they acted and effected the segregation, the confirmees were interested in preserving the entire tract from waste and injury, and in improving it; for until then they could not know what part might be assigned to them. Until then, no third person could interfere with their right to the possession of the whole. No third person could be permitted to determine, in advance of such segregation, that any particular locality would fall within the surplus, and thereby justify his intrusion upon it and its detention from them. If one person could in this way appropriate a particular parcel to himself, all persons could do so; and thus the confirmees would soon be stripped of the land which was intended by the government as a donation to its grantee, whose interests they have acquired, for the benefit of parties who were never in its contemplation. If the law were otherwise than as stated, the confirmees would find their possessions limited, first in one direction, and then in another, each intruder asserting that the parcel occupied by him fell within the surplus, until in the end they would be excluded from the entire tract. *Cornwell v. Culver*, 16 Cal. 429; *Riley* v. *Heisch*, 18 id. 198; *Mahoney* v. *Van Winkle*, 21 id. 552.

The defendants acquired no rights as pre-emptioners under the laws of the United States. Lands claimed under Mexican grants in California are restricted from settlement so long as

the claims of the grantees remain undetermined.   10 Stat. 246.
Their possession, therefore, was that of simple intruders and
trespassers without color of right.[1]

*Judgment affirmed.*

---

[1] For the final decision of the Land Department upon the survey made, see
Copp's Public Land Laws, 534–540.