## HOSMER *v.* WALLACE.

1. Pending a proceeding in a tribunal of the United States, for the confirmation of a claim to lands in California, under a Mexican grant, no portion of them embraced within the boundaries designated in the grant is open to settlement, under the pre-emption laws, although, upon the final survey of the claim when confirmed, there may be a surplus within those boundaries.

2. Until a segregation of the quantity granted is made by an approved official survey, third parties cannot interfere with the grantee's possession of the lands, and limit it to any particular place within those boundaries.

3. Between March 1, 1856, and May 30, 1862, unsurveyed public lands in California were not subject to settlement under the pre-emption laws. Since the latter date, they, as well as surveyed lands, have been so subject.

4. The right of pre-emption only inures in favor of a claimant when he has performed the conditions of actual settlement, inhabitation, and improvement. As he cannot perform them when the land is occupied by another, his right of pre-emption does not extend to it.

5. The object of the seventh section of the act of July 23, 1866 (14 Stat. 218), "to quiet land-titles in California," was to withdraw from the general operation of the pre-emption laws lands continuously possessed and improved

by a purchaser under a Mexican grant, which was subsequently rejected, or limited to a less quantity than that embraced in the boundaries designated, and to give to him, to the exclusion of all other claimants, the right to obtain the title.

6. A *"bona fide* pre-emption claimant"* is one who has settled upon lands subject to pre-emption, with the intention to acquire them, and who, in order to perfect his right to them, has complied, or is proceeding to comply, in good faith with the requirements of the pre-emption laws.

ERROR to the Supreme Court of California.

This was a suit to charge the defendant, as trustee of certain land in California, and to compel him to transfer the title to the plaintiff. The District Court of the State, in which it was brought, rendered judgment for the defendant. The Supreme Court of the State affirmed it, and the plaintiff has brought the case here. The facts are sufficiently stated in the opinion.

*Mr. S. F. Leib* for the plaintiff in error.
*Mr. George A. Nourse, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

The defendant has a patent of the United States for certain land in the county of Santa Clara, in the State of California. The plaintiff claims that he has an equitable right to the land by virtue of his settlement thereon, and subsequent proceedings under the pre-emption laws; and therefore seeks to charge the defendant as trustee of the title for his benefit, and to compel its transfer to him.

It appears from the record that the premises are within the boundaries of a grant made by the former government of Mexico to one Estrada. The grants of that government in California were sometimes of tracts with defined boundaries, and sometimes of places by name where the boundaries were known and could be readily identified; but more frequently they were of a specified quantity of land within boundaries embracing a larger amount, to be measured off and segregated by magistrates of the vicinage. A grant of the latter class was usually in form of the entire tract within the boundaries mentioned, with a condition limiting its extent to the quantity specified, the surplus after the measurement being reserved for the use of the nation. The grantee could not measure off the quantity thus

specified so as to bind the government. This could be done only by its officers, pursuant to regulations established for that purpose. Until the segregation was thus made, no third person could interfere with the grantee's possession, and attempt to limit it to any particular place within the boundaries designated:

Soon after the acquisition of California, Congress provided by law for an examination of the various grants of land made by the former government, the confirmation of such as were found to be valid and entitled to recognition, the survey and measurement of the tracts or quantities granted, and the issue of patents to the confirmees. And in order that these proceedings might not be defeated, and that the rights of the grantees in the mean time should not be impaired or embarrassed by the settlement of others, upon pretence that the grants were invalid, or that there was a surplus within their boundaries over the quantity granted, which could be appropriated, the lands claimed under these grants were excepted from the operation of the pre-emption laws, when they were extended over the State.

In the investigations thus authorized, many grants supposed to be valid were rejected; and in numerous instances land purchased from the grantees and improved was excluded by the surveys from the tracts confirmed. To meet the hardships thus arising, and to enable purchasers in good faith and for value to hold the tracts improved by them, Congress, in an act passed on the 23d of July, 1866, to quiet the title to lands in California, provided as follows: —

"That where persons in good faith and for a valuable consideration have purchased land of Mexican grantees or assigns, which grants have subsequently been rejected, or where the lands so purchased have been excluded from the final survey of any Mexican grant, and have used, improved, and continued in the actual possession of the same according to the lines of their original purchase, and where no valid adverse right or title (except of the United States) exists, such purchasers may purchase the same, after having such lands surveyed under existing laws, at the minimum price established by law, upon first making proofs of the facts as required in this section, under regulations to be provided by the Commissioner of the General Land-Office." 14 Stat. 220, sect. 7.

In the present case, it appears that prior to February, 1862, Estrada, the original grantee of the Mexican government, sold to one Lyons his right to a portion of the land within the boundaries mentioned in his grant, embracing the premises in controversy; that previously, in October, 1856, the plaintiff had settled upon these premises, and erected a house thereon, claiming that he made the settlement under the pre-emption laws of the United States; that, in February, 1862, he was evicted from them by the sheriff of the county under a judgment in ejectment recovered by Lyons; and that thereupon he removed his house and improvements to adjacent land. After this eviction, the defendant purchased from Lyons his right under the grant to the premises, and has ever since been in their actual possession and use.   The grant had been previously confirmed, but for a less quantity than that contained within the boundaries mentioned; and upon the final survey, which was approved in June, 1865, after the defendant's purchase, these premises were excluded.   The public surveys were subsequently extended over the land, and in July, 1866, the plaintiff filed a declaratory statement in the proper land-office, claiming to pre-empt the premises together with other land, alleging his settlement thereon in October, 1856, and in September following made proof of his claim before the register and receiver, and was allowed to enter the land.   He then paid the purchase-money and obtained a certificate of payment.   In the mean time, the act of July 23, 1866, was passed, and under it the defendant claimed the right to purchase the premises. The Commissioner of the General Land-Office thereupon directed the register and receiver at San Francisco to investigate the entry of the plaintiff, and to take such testimony as might be offered by him and the defendant concerning their respective claims, and to report the same to him, together with their decision.   Both parties appeared before these officers and supported their respective claims.   The decision of the officers was in favor of the plaintiff; the defendant appealed to the commissioner, by whom the decision was reversed, and the land awarded to him.   On further appeal to the Secretary of the Interior, the decision of the commissioner was affirmed; and, upon payment of the purchase-money, a patent was issued to the defendant.

The decision of the Commissioner and of the Secretary was clearly correct. The plaintiff had acquired by his settlement in 1856 no such interest in the premises as could control the disposition of them by the United States, should it be ultimately determined that they were not covered by the grant. The land within the boundaries of the grant was not open to settlement under the pre-emption laws; and his occupation from 1856 to his eviction in 1862 was that of a trespasser, and did not originate any rights which the government was bound to respect. The land was not then "public land," in the sense of those laws; and even if it had been public land, to which no private claim was made, it would not have been subject to settlement under them until it had been surveyed. The act of Congress of March 3, 1853, allowing a settlement on unsurveyed lands in California, was limited in its operation to one year. 10 Stat. 246, proviso to sect. 6. By the act of March 1, 1854, this privilege was extended for two years from that date, when it expired. Id. 268. No other statute was passed opening unsurveyed lands in California to pre-emption settlement until May 30, 1862. 12 id. 409. The occupation, therefore, of the plaintiff in October, 1856, was a mere intrusion upon the claim of another, without any license of the government; and after he was evicted by legal process in February, 1862, the premises were in the possession of the defendant, and therefore not open to settlement by him. Whatever right of pre-emption the plaintiff acquired by his settlement to land outside of the boundaries of the Mexican grant originated after May 30, 1862; but as to land within those boundaries, no right could be initiated until the land was excluded from the tract confirmed by the approved survey in June, 1865. In neither case could the right of pre-emption extend to land in the occupation of the defendant at those dates. To create a right of pre-emption there must be settlement, inhabitation, and improvement by the pre-emptor, conditions which cannot be met when the land is in the occupation of another. Settlement, inhabitation, and improvement of one piece of land can confer no rights to another adjacent to it, which at the commencement of the settlement is in the possession and use of others, though upon a subsequent survey by the government it prove to be

part of the same sectional subdivision. Under the pre-emption laws, as held in *Atherton* v. *Fowler* (96 U. S. 513), the right to make a settlement is to be exercised on unsettled land; the right to make improvements is to be exercised on unimproved land; and the right to erect a dwelling-house is to be exercised on vacant land: none of these things can be done on land when it is occupied and used by others.

There was, therefore, no valid adverse right or title, except. that of the United States, to the premises in controversy when they were excluded by the approved survey from the tract confirmed; nor had the plaintiff the right of a pre-emption claimant to them. No just ground, consequently, existed for refusing to the defendant the privilege of purchasing them under the act of 1866. It is found by the court that he bought the land, in good faith and for a valuable consideration, from the assignee of the Mexican grantee before the survey of the grant; and that it has since been in his actual possession and use, according to the lines of his original purchase. And besides, the use, occupation, and improvement of the land, required by that act, being matters for the determination of the officers of the Land Department, it must be presumed from their decision that they were sufficiently established.

The contention of the plaintiff, if we understand it, is that the proviso in the eighth section of the act of 1866 changed the doctrine stated, and gave him a right of pre-emption to land excluded by the survey from the tract confirmed, although it was at the time in the occupation of the defendant. The proviso is, that nothing in the act "shall be construed so as in any manner to interfere with the right of *bona fide* pre-emption claimants;" and it is argued that some operation must have been intended to be given it, and that it can have none against a purchase by the claimant under the grant title, unless a pre-emption right could be acquired to the land whilst in his possession. Conceding this to be correct, we do not perceive that the conclusion follows for which the plaintiff contends. If the proviso can have no operation against a purchase by a claimant under the grant title, it is for the obvious reason that the conditions upon which the claimant can make a purchase are incompatible with those upon which a pre-emption right can

arise.   The inference is, that the proviso must be applied to other land which the act mentions.   The object of the act was to withdraw land continuously possessed and improved by a purchaser under a Mexican grant from the general operation of the pre-emption laws, and to give to him, to the exclusion of all other claimants, the right to obtain the title.   That it was competent for Congress to deal with the land as it chose does not admit of question.   No vested rights in the land could be acquired by any one until it was open to settlement; nor afterwards, unless the pre-emptor made his entry and obtained a patent certificate before the passage of the act.   *Frisbie* v. *Whitney*, 9 Wall. 187; *The Yosemite Valley Case*, 15 id. 77.

The term *bona fide*, as applied to the pre-emption claimant, does not change the qualifications of such claimant, nor the conditions upon which, under the general law, a settlement with a view to pre-emption is permitted.   It was intended to designate one who had settled upon land subject to pre-emption, with the intention to acquire its title, and had complied, or was proceeding to comply, in good faith, with the requirements of the law to perfect his right to it.   The plaintiff does not come within this class.

*Judgment affirmed.*