[No. 13562.   In Bank.— January 4, 1891.]

## JAMES W. SHANKLIN, APPELLANT, v. JOHN McNAMARA ET AL., RESPONDENTS.

PUBLIC LANDS — ACT TO QUIET LAND TITLES— MEXICAN GRANT — PATENT — EJECTMENT — EVIDENCE. — A patent issued by the United States under the act of Congress of July 23, 1866, to quiet land titles in California, to a *bona fide* purchaser of lands within the exterior boundaries of a Mexican grant, which were excluded from the final survey, is *prima facie* evidence of a right in the patentee to recover the lands patented in an action of ejectment, and is conclusive, unless it can be successfully impeached by the defendants.

ID. — IMPEACHMENT OF PATENT — EVIDENCE — SWAMP AND OVERFLOWED LAND — CERTIFICATE OF PURCHASE. — The patent so issued cannot be impeached by evidence that the land patented was swamp and overflowed land, notwithstanding the defendants hold a certificate of purchase thereof from the state, and it is not error to exclude such evidence.

ID. — SWAMP-LAND IN MEXICAN GRANT — CONSTRUCTION OF ACT OF 1850. — Though the act of September 28, 1850, operated as a grant of swamp-lands to the state *in præsenti*, it was not the intention of Congress to grant thereby to the state of California swamp-lands lying within the exterior boundaries of a Mexican grant, though such lands were finally excluded from the survey.

ID. — ACTION OF LAND DEPARTMENT — CONTEST — ADJUDICATION OF FACTS. — The decision of the land department of the United States upon questions of fact coming before it upon a contest of the right to enter and purchase lands from the United States is conclusive upon the parties before it and those claiming under them, if the decision is free from fraud and fraudulent imposition.

ID. — FRAUD — COLLATERAL ATTACK — RELIEF IN EQUITY. — Fraud or fraudulent imposition upon the land department in the obtaining of a patent cannot be set up by way of collateral attack upon the patent in an action of ejectment brought by the patentee, and the patent can only be assailed on these grounds by a proceeding in equity.

ID. — ESTOPPEL OF STATE AND ITS GRANTEE — QUALIFICATIONS OF PATENTEE — LOCATION WITHIN MEXICAN GRANT — CHARACTER OF LAND. — If the state is a party to a contest before the land department in respect to the entry and purchase of lands from the United States by a purchaser from a Mexican grantee under the act of 1866, both the state and its grantees are bound by the decision of the land department as to the qualification of the purchaser, and that the land was within the exterior boundaries of a Mexican grant, and also as to the character of the land as not being swamp and overflowed, provided its character was distinctly adjudged by the decision.

ID. — INSUFFICIENT DECISION AS TO CHARACTER OF LAND. — Where the language of the decision of the land department as to whether the land was or was not swamp and overflowed is indefinite and ambiguous, and does not distinctly adjudicate the character of the land, it cannot be regarded as determining that it was not swamp and overflowed, notwithstanding a patent was awarded to a purchaser from a Mexican grantee under the act of 1866.

ID. — JURISDICTION OF LAND DEPARTMENT — LAND PREVIOUSLY GRANTED. — The land department of the United States cannot grant land; and it is not within its power to award to one person land which by an act of Congress has been previously granted to another, and its decision so awarding it is a nullity, and passes no title.

MEXICAN GRANT — EXTERIOR BOUNDARIES — RIGHT OF POSSESSION. — The grantee of a Mexican grant of a smaller quantity of land to be selected within a larger area is entitled to the possession of all the land within the exterior boundaries of the grant until the specific quantity granted is set off by a final survey; and this right of possession is property, full protection of which was guaranteed by the treaty of Guadaloupe Hidalgo, and by the constitution and laws of the United States.

SWAMP AND OVERFLOWED LANDS — DELAY IN DETERMINING CHARACTER OF LAND — EVIDENCE. — Where the land in controversy was surveyed in 1869, and never returned certified or listed to the state as swamp-land, and was patented in 1882 by the United States to a *bona fide* purchaser from a Mexican grantee, pursuant to the act of Congress of 1866, the delay of a swamp-land claimant under a certificate of purchase from the state issued in 1856 to have any steps taken to have the character of the land determined, as provided by said act, is strongly persuasive, though not conclusive, evidence that the land was never swamp and overflowed.

APPEAL from a judgment of the Superior Court of Sutter County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*M. E. Sanborn*, and *A. L. Hart*, for Appellant.

The swamp-land act operated as a grant *in præsenti.* (*Railroad Co.* v. *Smith*, 9 Wall. 99; *Martin* v. *Marks*, 97 U. S. 345; *Rice* v. *Sioux City and St. Paul R. R. Co.*, 110 U. S. 695; *French* v. *Fyan*, 93 U. S. 169; *Summers* v. *Dickinson*, 9 Cal. 554.) Neither government is bound by the action of the other, and the character of the land may be shown as against a claimant under either government. (*Kernan* v. *Griffith*, 27 Cal. 87; 31 Cal. 461; *Robinson* v. *Forrest*, 29 Cal. 317; *Thornton* v. *Thompson*, 28 Cal. 602; *Thompson* v. *Thornton*, 50 Cal. 142; *Kile* v. *Tubbs*, 59 Cal. 191; *Wright* v. *Roseberry*, 121 U. S. 488–521.) Lands within the exterior boundaries of a floating grant are public lands. (*United States* v. *McLaughlin*, 127 U. S. 452–457.)

*J. H. Craddock*, for Respondents.

The action of the land department is conclusive as to the character of the lands. (*Wright* v. *Roseberry*, 121 U. S. 488–521; *French* v. *Fyan*, 93 U. S. 169.) The state was concluded by the decision of the land department. The act of 1866 gave a *bona fide* purchaser from a Mexican grantee an exclusive right of purchase. (*Hosmer* v. *Wallace*, 97 U. S. 575–581; *Hess* v. *Bolinger*, 48 Cal. 352–354.)

THORNTON, J. — Ejectment. Judgment for plaintiff. Motion for a new trial by defendants denied, and appeal from the judgment, and the order denying the motion.

The plaintiff claims title to the land in controversy under a patent of the United States issued to Willard Hodges, dated December 15, 1882, which was put in evidence, as was also a conveyance of the tract by Hodges to the plaintiff. The claim of Hodges is under the seventh section of the act of Congress of July 23, 1866, entitled "An act to quiet land titles in California." (14 Stats. at Large, 220.) This section provides that when

persons in good faith, and for a valuable consideration, have purchased land of Mexican grantees or assignees, which grants have subsequently been rejected, or when the lands so purchased have been excluded from the final survey of any Mexican grant, and have used, improved, and continued in the actual possession of the same according to the lines of their original purchase, and when no valid adverse right or title (except of the United States) exists, such purchasers may purchase the same, after having such lands surveyed under existing laws, at the minimum price established by law, upon first making proof of the facts as required herein, under regulations to be prescribed by the commissioner of the general land-office. Hodges and Upham made proof before the proper land-office of their right to purchase the land in suit under the section of the act of 1866 above referred to, bringing themselves within its provisions, and were allowed to purchase, and did purchase and procure, on this proof and purchase, the patent of the United States above mentioned, under which the plaintiff asserts title. This patent establishes *prima facie* the right of the plaintiff to recover, and must be regarded as conclusive against the defendants, unless the latter can attack it, and successfully impeach its sufficiency to vest title in those claiming under it.

Defendants claim that the rights possessed by them entitle them to attack the patent. They say that, as a matter of fact, the land sued for was on the twenty-eighth day of September, 1850, swamp and overflowed land, and by virtue of the act of Congress of that date, entitled "An act to enable the state of Arkansas and other states to reclaim the swamp-lands within their limits," the title to this tract passed from the United States to the state of California, and that it was out of the power of Congress, or of the United States government, in any way or mode, to divest this title so passed to the state by the act of 1850.

It must be regarded as settled beyond controversy that the first section of the swamp-land act (act of September 28, 1850) is a grant *in præsenti* to each state of the swamp and overflowed lands within its limits. The supreme court of the United States, speaking through Justice Field, have said of this act, in *Wright* v. *Roseberry*, 121 U. S. 486: "The words of the first section of the act 'shall be and are hereby granted' import an immediate transfer of interest, not a promise of transfer in the future."

This construction of the act has been sustained in several cases. (See *Tubbs* v. *Wilhoit*, 73 Cal. 63, and cases there cited, and cases cited in *Wright* v. *Roseberry*, 121 U. S. 486.)

The contention of the defendants is, that they can impeach the patent of plaintiff by showing that the land in suit was on the day of the passage of the swamp-land act of 1850 in fact swamp and overflowed lands. To this contention plaintiff replies that defendants are estopped from making such proof by an authoritative decision of a competent tribunal to the contrary binding on both plaintiff and defendants.

When the defendants offered to defeat the effect of the patent to prove that the land was swamp and overflowed on the twenty-eighth day of September, 1850, the plaintiff met it with proof of what he claimed to be an authoritative decision and adjudication to the contrary, as above stated, and with the objection that by reason of such decision such evidence was incompetent and improper.

The material facts pertaining to this adjudication are as follows: In 1871 a contest arose and was carried on in the United States land-office in Marysville, in the contested case of Willard Hodges and George B. Upham in regard to tract No. 12, township 12 north, range 3 east, to which John McNamara (one of the defendants in this case) and the state of California were parties.

Tract 12 includes the land in suit in this case. Hodges and Upham claimed the whole of this tract 12.

This contest involved the right to a portion of this tract 12 as between Hodges and Upham and John McNamara, and to a portion of the same tract as between Hodges and Upham and the state of California. There were other parties to the contest, but as their claims are not in any way involved in this action, they need not be further referred to. Citations were issued and served on all the parties. McNamara appeared by counsel and with his witnesses. The state of California did not appear, nor did any one appear for it. The register and receiver awarded the land in contest (in suit here) between the claimants Hodges and Upham and the state of California to the former. To John McNamara a portion of tract 12 was awarded as against Hodges and Upham. This last-named portion awarded to McNamara is not included in the land sued for in this action.

This decision, as between Hodges and Upham and the state of California, does not seem to have been carried by appeal to the commissioner of the general land-office at Washington. The decision of the register and receiver remains unchallenged by the state of California, or any one claiming under her.

In a contest with another claimant as to lots 22 and 2 (involved herein), these lots were on appeal awarded by the Secretary of the Interior to Hodges and Upham.

In awarding the lands in suit here to Hodges and Upham, the register and receiver held that their right to purchase the lands was superior to that of the state. As the ruling was not appealed from, it would usually be regarded as concluding the state, and estopping her from any claim to the land in controversy.

But did the register and receiver hold that the land was not swamp and overflowed?

On this point they say, in their opinion: "Contestant, state of California, does not appear to contest the claim

of Hodges and Upham, and no direct testimony was called out as to the alleged swamp and overflowed character of the land in dispute between these parties. The evidence, however, shows that all of said tract No. 12 has for many years been used for ordinary purposes of agriculture, in growing grain and grass for hay and pasturage. And the fact of its adaptability for the cultivation of these staple agricultural products would seem to determine the question as to the character of the land as against the state. At any rate, these circumstances, coupled with the fact that prior to the act of July 23, 1866, and to the state's disposal of the land to purchasers in good faith, the claimants became purchasers in good faith of the grant title to the same, should, in our judgment, conclude the state in the premises."

It is undoubtedly held, in the opinion of the register and receiver, that Hodges and Upham were entitled to the land involved in the contest with the state, under the seventh section of the act of July 23, 1866. As far as regards the land in suit, the decision is binding on the state in so far as the register and receiver have decided on the right of Hodges and Upham (see *Hosmer* v. *Wallace*, 97 U. S. 580), and also binding, in our judgment, on defendants, the McNamaras. In these contests before the officers of the land department as to the right to enter land, the parties to whom it could be awarded on the contest are the proper and necessary parties. In the contest we are considering between Hodges and Upham and the state of California, land could be awarded only to one of these parties. It would not and could not be awarded to a grantee of the state, as in this case to McNamara. The United States authorities in such contests only notice the rights of parties who have a right under the laws of the United States to enter and purchase the land. Any person claiming under the state must prosecute or defend his rights under the state as a party to the contest. Mc-

Namara, claiming under the state in this case, must have defended his right under the state as a claimant, and it was incumbent on him to do so. Therefore it follows that whatever was binding on the state bound McNamara. If, as the result of the contest between Willard Hodges and the state, it had been adjudged that the land was not swamp and overflowed, that would have bound the state, within the rule laid down in *Johnson* v. *Towsley,* 13 Wall. 72, approved and followed in *Hosmer* v. *Wallace,* 47 Cal. 471. (See also *Samson* v. *Smiley,* 13 Wall. 91; *Warren* v. *Van Brunt,* 19 Wall. 653; *Shepley* v. *Cowan,* 91 U. S. 330; *Moore* v. *Robbins,* 96 U. S. 530; *Hosmer* v. *Wallace,* 97 U. S. 580; *Marquez* v. *Frisbie,* 101 U. S. 473.) The determination of the facts in the same contest adjudging the right of Hodges and Upham as against the state to enter and purchase the land in suit is for the same reason binding on McNamara. The estoppel as to the state exists only as to the determination by the officers of matters of fact. Their determination, if free from fraud, and not the result of a fraudulent imposition upon them, is final and conclusive. It is still conclusive, though they may err in judgment as to the weight of testimony, or may decide directly against the evidence, subject to the limitation as to fraud and fraudulent imposition above stated.

It may be remarked that this matter of fraud, or fraudulent imposition, could not be set up in an action at law, as this is. The patent on these grounds must be assailed by a proceeding in equity. Such is the law on this subject. (See *Johnson* v. *Towsley,* 13 Wall. 72, and *Moore* v. *Robbins,* 96 U. S. 530.)

But if the officers of the land department award land to one person which has been granted to another, the courts of law can furnish a remedy. It is not within the power or jurisdiction of the land department to award that to one person which by an act of Congress has been granted to another. The land department cannot

grant land.   It is incumbent on the land department, in
executing the laws of Congress in relation to the public
lands, to award to a party claiming to enter and pur-
chase land such right as the laws of the United States
have invested him with in regard to the land he claims;
but if the laws have invested another with title by grant
to the land to another the decision of the land depart-
ment awarding it to another is a nullity.   No title passes
by such decision, though the officers of the land depart-
ment have decided that he is entitled to it.   To decide
otherwise would be to hold that the land department can
grant land contrary to an act of Congress.

It is argued here on behalf of appellants that the of-
ficers of the land department have not decided as a mat-
ter of fact that the land in controversy was not swamp
and overflowed.

It seems to us that this contention, on a fair consider-
ation and interpretation of the opinion of the register
and receiver, is sound and maintainable, and that the
decision of the register and receiver awards the land to
Hodges and Upham on their claim preferred under the
seventh section of the act of July 23, 1866, and regard-
less of the fact whether the land in contest before them
was swamp and overflowed or not.   The language of
their opinion on the point whether the land is swamp
and overflowed or not is indefinite and ambiguous, and
such that it cannot be said of it that it determines that
the land is not swamp and overflowed.   The opinion
refers to the evidence, and says of it: "That it would seem
to determine the question as to the character of the
land as against the state."   It does not say (as will be
observed on a perusal of it) that the evidence shows the
land to be dry land, and not swamp and overflowed, but
that it would seem to do so.   The opinion, in the next
sentence, proceeds: "At any rate, these circumstances,
coupled with the fact that prior to the act of July 23,
1866, and to the state's disposal of the land in good

faith," etc., proceeding then to award the land to Hodges and Upham upon this claim 'under the seventh section of the act of Congress just referred to.

The judgment of the register and receiver is too indefinite in its terms to be regarded as a decision that the land here was not swamp and overflowed.

Under these circumstances it is argued that the defendants have a right to show that the land is swamp and overflowed; that, as such, it vested in the state by the act of the 28th of September, 1850, known as the swamp-land act, and that having so vested, it could not be divested, and the title conferred on another, by the subsequent act of July 23, 1866.

Did the swamp-land act of 1850 grant the swamp and overflowed lands within the exterior bounds of a grant, which were excluded on the final survey, to the state of California? This is a question of interpretation of the provisions of the act of 1850, considered in the light of and influenced by the nature of the grants made by the Mexican authorities in California. Was it the intention of the law-makers to grant to the state lands of the nature and character above mentioned? The question is one relating to the intent of the law-making power.

We are of opinion that there was no such intent to grant by the act referred to. The reasons for this opinion we will proceed to give.

It is the settled law of this state that the grantee of a Mexican grant is entitled to the possession of all the land within the exterior limits of the tract designated in the map or diseño (which generally attended the application for a grant), though the quantity intended to be allotted to him on the final survey is a much less quantity than that designated in the map or diseño, and this right continues until the final survey has been made and approved, and perhaps until the patent is issued; or to express the rule more briefly, where the grant is of a smaller quantity (say three leagues) within

a larger area (say of ten leagues), from which the three leagues are to be taken, that the grantee is entitled to the possession of the whole until the quantity (three leagues) to be allotted to him is set off by the final survey, and that he (the grantee) is entitled to recover possession of the whole ten leagues by action appropriate to that end, until the specific quantity granted him is set off.

The above is the rule declared in *Ferris* v. *Coover*, 10 Cal. 621, followed in numerous cases to the same effect. (*Cornwall* v. *Culver*, 16 Cal. 429; *Riley* v. *Heisch*, 18 Cal. 198; *Mahoney* v. *Van Winkle*, 21 Cal. 552.) The same rule has been approved and declared to be the law by the supreme court of the United States in *Van Reynegan* v. *Bolton*, 95 U. S. 35, 36.) We insert here that portion of the opinion (by Field, J.) which relates to this point as a clear exposition of the rule and the reasons on which it rests: "In the case at bar the surveyor-general for California disregarded the boundaries established upon the juridical possession delivered to the grantee. He proceeded upon the conclusion that the confirmees were restricted by the decree to one square league, to be measured out of the tract within those boundaries, which exceeded that amount by about fifteen hundred acres. Whether the terms of the decree justified his conclusion is a question upon which it is unnecessary for us to express an opinion. That is a question which must, in the first instance, be determined by the land department in carrying the decree into execution by a survey and patent. It is sufficient for the present case that the survey made was contested by the confirmees, and the contest was undetermined when this action was tried. Until finally proved, the survey could not impair their right to the possession of the entire tract as delivered by the former government to the grantee under whom they claim. Until then, it was inoperative for any purpose. Even if the limitation to one square league

should ultimately be held correct, that square league might be located in a different portion of the tract by direction of the land department, to which the supervision and correction of surveys of private land claims are intrusted. The confirmees could not measure off the quantity for themselves, and thus legally segregate it from the balance of the tract. The right to make the segregation rested exclusively with the government, and could only be exercised by its officers. Until they acted and effected the segregation, the confirmees were interested in preserving the entire tract from waste and injury, and in improving it; for until then they could not know what part might be assigned to them. Until then, no third person could interfere with their right to the possession of the whole. No third person could be permitted to determine, in advance of such segregation, that any particular locality would fall within the surplus, and thereby justify his intrusion upon it and its detention from them. If one person could in this way appropriate a particular parcel to himself, all persons could do so; and thus the confirmees would soon be stripped of the land which was intended by the government as a donation to its grantee, whose interests they have acquired, f, r the benefit of parties who were never in its contemplation. If the law were otherwise than as stated, the confirmees would find their possessions limited, first in one direction, and then in another, each intruder asserting that the parcel occupied by him fell within the surplus, until in the end they would be excluded from the entire tract."

This right of possession is property, and full protection of it was guaranteed to the Mexican grantee by the treaty of Guadaloupe Hidalgo, and by the constitution and laws of the United States. (*Ferris* v. *Coover*, 10 Cal. 620, 621.)

That the tract of land involved in this case was within the limits of the grant to Sutter was conclusively

determined against defendants in the proceeding in the
land-office, considered in a former part of this opinion,
where the land in suit was awarded to Hodges and Up-
ham under the seventh section of the act of Congress of
July 23, 1866.    When the swamp-land act of the 28th of
September, 1850, was passed, Sutter had a right to pos-
session of the land sued for, and it is not to be supposed
that the Congress of the United States would grant land
to one when another person had to it a right of posses-
sion for an indefinite period, guaranteed to him by its
laws at the time the grant is said to have been made.
It cannot be presumed that Congress would have
granted directly and unconditionally to a person a tract
of land of which the United States did not have the
absolute and uncontrolled title, so that its grantee might
at once take possession.    It could not be predicated of
such a grant as the swamp-land act that Congress in-
tended to grant land to the state when at the time of the
grant Sutter had title to possession of the land, and
might become invested with the full, legal title.    He
would have been so invested if, on the final survey of
his grant, the land in suit had been included in such
final survey.    The principle here invoked and relied on
was adopted by the United States supreme court in
*Leavenworth etc. R. R. Co.* v. *United States*, 92 U. S. 733,
where it was held that a grant of land to the state of
Kansas to aid in the construction of a railroad embraced
only the land whereto the complete title was in the
United States at the date of the act, and was applicable
only to public lands owned absolutely by the United
States.    This was held in regard to a grant of land to
the state of Kansas, where, at the time the grant was
made, the land in question was included in a reservation
made to the Osage tribe of Indians.

We think the rule of construction laid down in the
case just cited shows that it was not the intention of
Congress to grant to the state of California by the act of

September 28, 1850, lands the right to the possession of which was then vested in a Mexican grantee, and guaranteed to him by a treaty as well as by the constitution and laws of the United States.

We see nothing in *Newhall* v. *Sanger*, 92 U. S. 761, or *United States* v. *McLaughlin*, 127 U. S. 452–457, in conflict with anything ruled herein. We cannot see that these cases have any direct application to the case under consideration.

From the foregoing it follows that the judgment and order are without error, and must be affirmed.

There is some very significant evidence in the record in relation to the land in suit, upon which we will make some observations in its relation to the legislation of Congress in regard to swamp and overflowed lands.

The fourth section of the act of July 23, 1866, is in these words:—

"Sec. 4. And be it further enacted, that in all cases where township surveys have been or shall hereafter be made under the authority of the United States, and the plats thereof approved, it shall be the duty of the commissioner of the general land-office to certify over to the state of California as swamp and overflowed all the lands represented as such, upon such approved plats, within one year from the passage of this act, or within one year from the return and approval of such township plats. The commissioner shall direct the United States surveyor-general for the state of California to examine the segregation maps and surveys of the swamp and overflowed lands made by said state; and where he shall find them to conform to the system of surveys adopted by the United States, he shall construct and approve township plats accordingly, and forward to the general land-office for approval; *provided*, that in segregating large bodies of land notoriously and obviously swamp and overflowed it shall not be necessary to subdivide the same, but to run the exterior lines of

such body of land.   In case such state surveys are found
not to be in accordance with the system of United States
surveys, and in such townships as no survey has been
made by the United States, the commissioner shall
direct the surveyor-general to make segregation surveys,
upon application to said surveyor-general by the gover-
nor of said state, within one year of such application, of
all the swamp and overflowed land in such townships,
and to report the same to the general land-office, repre-
senting and describing what land was swamp and over-
flowed under the grant, according to the best evidence
he can obtain.   If the authorities of said state shall
claim as swamp and overflowed any land not repre-
sented as such upon the map or in the returns of the
surveyers, the character of such land at the date of the
grant, September 28, 1850, and the right to the same,
shall be determined by testimony, to be taken before the
surveyor-general, who shall decide the same, subject to
the approval of the commissioner of the general land-
office."

The record shows that the plaintiff offered in evidence
the approved official township plat of township 13 north,
range 3 east, Mount Diablo meridian, filed in the United
States land-office at Marysville, in this state, on August
2, 1869, and also the approved diagram of amendments
to said plat from the office of the surveyor-general of the
United States for the state of California, dated the 6th of
September, 1869, filed in the United States land-office
above mentioned, of the land district in which the land
in controversy is situated, on September 9, 1869, showing
the public lands and claims with specific boundaries
within the rejected limits of the New Helvetia rancho.
The above plat and diagram include the land involved
herein, which is designated thereon as lands claimed by
purchasers of Mexican grantees, or their assignees, and
which have been excluded from the final survey of the
Sutter grant.

It will be observed that the land involved in this suit was not represented on the approved plat, or the approved diagram of amendments to it, as swamp and overflowed, and it therefore did not become the duty of the commissioner of the general land-office, under the fourth section of the act of 1866, above quoted, to certify such land over to the state. Nor does it appear in the record that any township plat has been constructed which represents such land to be swamp and overflowed.

Under the provisions of the fourth section it will be seen that the governor of the state was vested with authority to have the swamp and overflowed lands segregated by survey on application to the surveyor-general, and it was further provided, in the same section, that if the authorities of the state shall claim as swamp and overflowed any land not represented as such upon the map, or in the returns of the surveyors, the character of such land at the date of the grant (September 28, 1850), and the right to the same, shall be determined by testimony, to be taken before the surveyor-general, who shall decide the same, subject to the approval of the commissioner of the general land-office.

In this case no steps have been taken by the governor or the state authorities to have the character of this land determined,—to have it decided whether it was swamp and overflowed at the date of the grant. Nor does it appear that the defendants have even taken steps to have the governor or state authorities move in the matter. The patent under which the plaintiff makes title was issued on the 16th of December, 1882, on a claim commencing as far back as 1850. Defendants claim that their claim rested on a certificate of purchase issued on the 21st of July, 1856. The delay in this matter to have the character of the land determined, as could have been done under the section of the act of 1866, above quoted, though not conclusive, is strongly persuasive that the

land was never of the character described by the swamp-land act of 1850 as swamp and overflowed.

The court did not err in refusing to allow defendants to prove that the lands in suit belonged to the category of swamp and overflowed lands.

We find no error in the record, and the judgment and order are affirmed.

McFARLAND, J., WORKS, J., and SHARPSTEIN, J., concurred.

PATERSON, J., concurring.— I concur in the judgment. The swamp-land grant of 1850 is one *in præsenti*, and passed the title to the lands as of its date, but it could not attach to any specific tract until it was determined by the proper officer that the land was swamp in character. Under the act of 1850 it was the duty of the Secretary of the Interior to make out accurate lists and plats, and transmit the same to the governor of the state, and at the request of the latter, cause patents to issue therefor. No provision was made for a review of his action in ascertaining and designating the character of the lands. Under the act of July 23, 1866, which was passed to quiet land titles in California, the duty of identifying swamp-lands by survey and segregation was put upon the surveyor-general, subject to the approval of the land commissioner. It was provided that a hearing might be had by the state before the surveyor-general, for the purpose of showing that the township plats were incorrect. Provision was also made for the adjustment of the claims of *bona fide* purchasers from Mexican grantees, where the land purchased had been excluded from the survey of the grant on its final confirmation. These contests were heard before the register and receiver of the local land-office, under certain rules formulated by the commission.

On August 2, 1869, the land in controversy was returned and designated upon the official plat as public

land claimed by purchasers of Mexican grantees, or their assigns. It was not returned as swamp-land, and was not designated on the official plat with the usual government sections and subdivisions, but in accordance with existing lines of subdivisions, so as to include " permanent improvements," as provided by section 7 of the act of July 23, 1866. This plat, which, in effect, showed that the land was not regarded by the surveyor-general as swamp and overflowed land, remained on file in the local land-office from August, 1869, to June, 1888, without challenge by any one — the state or its grantees — as to the character of the land. Hodges and Upham filed in the local land-office, in September, 1869, a pre-emption claim for the land under section 7 of the act of 1866, claiming to have purchased it for a valuable consideration from the Mexican grantees, and placed valuable improvements thereon in part only. On this statement citations were issued by the officers of the land-office to the defendant, who had filed on a portion of the tract described in the Hodges claim, and to the state, to show cause against the application of Hodges and Upham to purchase. The state did not appear, but the defendant herein appeared and contested the application. An appeal was taken to the commissioner of the general land-office, and from his decision to the Secretary of the Interior, who finally determined that the applicants were entitled to a patent.

I think the proceedings had on application of plaintiff's grantors, who purchased the land under the provisions of the seventh section of the act of July 23, 1866, and the decision rendered by the department, are a complete bar to any claim of the state, and to the claim of the defendants. It is true, the proceedings against McNamara involved other lands than those in controversy here, but they also involved the right of said grantors to purchase the lands in controversy as against all parties to that action. At the time those proceedings were pending

McNamara held a certificate of purchase under which he now claims title to the lands in suit. Although that certificate was issued in 1860, and the hearing before the land-office was not had until March, 1871, yet I think McNamara's right was concluded therein. The application of Hodges and Upham was based upon the allegation that they were *bona fide* purchasers for a valuable consideration from Mexican grantees of land which had been excluded from the final survey of the grant; that they had made improvements and occupied the land according to the lines of their original purchase, and that there was no valid adverse right except that of the United States. In accordance with the rules of the department the said McNamara and all other persons interested were duly cited to appear and contest their right to purchase the land under the act of July 23, 1866. The defendant did appear and contest the claimant's right to a portion of the land, but made no contest as to that portion which is in controversy here, and for which he at that time held a certificate of purchase. The state had parted with her title to the defendant, and was interested in the contest. It was the duty of McNamara, as grantee of the state, to defend whatever claim he had under his certificate. It seems to me that, in the absence of fraud, the decision of the land department was binding on all the parties and all the world. ( *Wright* v. *Roseberry*, 121 U. S. 488; *French* v. *Fyan*, 93 U. S. 169.)

The defendants did not offer to show that the land was swamp and overflowed at the time the grant took effect, to wit, September 28, 1850. The evidence offered was all addressed to the question as to its character at the time of the trial. The court did not err, therefore, in excluding the evidence.