CRAWFORD v. BURR et al.

(Third Division. Valdez. February 16, 1903.)

No. 5.

1. PUBLIC LANDS—MILITARY RESERVATION.

Plaintiff acquired peaceable possession of a small tract of land for a horse lot and stable on the military cantonment or reservation at Valdez by permission of the commander of the post. *Held* that, as against the government, he was a mere trespasser, liable to be ejected without notice by the military authorities; he initiated no right to the ground by such possession.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Public Lands, §§ 51–53.]

2. PUBLIC LANDS—EJECTMENT.

The military reservation at Valdez was formally abandoned July 25, 1902. Plaintiff was then in possession of a stable there-

2 A.R.—3

on, but without any fixed boundaries or other claim of right to any portion of the ground. The land was located by town-site claimants. Plaintiff brought ejectment to recover possession. *Held*, that he was limited to the land actually occupied by his stable.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Public Lands, §§ 51–53, 92.]

This is a suit in ejectment to recover a tract of land 100 feet wide fronting on Reservation avenue, and extending back therefrom 214 feet. It is conceded by both parties that the tract was embraced in the Valdez military reservation at all times in question till the formal opening of the reservation on July 25, 1902. Plaintiff shows that in the fall of 1900 he obtained a verbal permission from Captain W. R. Abercrombie, then in charge of military affairs at Valdez, to erect a small log barn on the premises, which he continued to use from time to time until the opening of the reservation in 1902. He testifies that at that time he also built a brush fence inclosing the tract in dispute, though the evidence to support this is vague and very unsatisfactory. Plaintiff admits that the fence disappeared in the winter of 1900 or spring of 1901, and was never replaced, while other witnesses deny its existence then or at any time. There is some testimony to show that in 1901 one Ammon, an adjoining claimant, set some posts around a tract claimed by him, and possibly a few on the Reservation avenue line of the property in dispute, but no claim is made that such a structure as a fence, then or at any subsequent date, inclosed the disputed tract. The ejectment is based solely on the presence of this small log barn and the alleged brush fence, both built in 1900. The defendants claim title by settlement on July 25, 1902, the date of the formal opening of the military reservation to settlement. They, in company with a great number of other persons, took up this military reservation after its abandonment on that day for town-site pur-

poses, divided it into lots, blocks, and streets, and erected houses on their various lots for residence and other purposes. It is to remove these town lot claimants that plaintiff brought this action in ejectment. Both parties waived a jury, and requested the court to hear and determine the controversy.

Leedy & Kelsey, for plaintiff.
Goodell & Edwards, for defendants.

WICKERSHAM, District Judge. Two important questions are involved in this case and determine the action: (1) What right did Crawford acquire in the tract in controversy by his erection of the barn and alleged brush fence in 1900 and his possession thereby; and (2) what rights had he in the tract on July 25, 1902, when defendants entered and took possession? The land having been set apart and used as a military reservation under the direction of the Secretary of War, and the public funds having been expended thereon for such purposes, it became a military reservation, subject to the rule announced in the early case of Wilcox v. M'Connell, 13 Pet. 498, 10 L. Ed. 264, and affirmed in Grisar v. McDowell, 73 U. S. 363, 18 L. Ed. 863. The pre-emption act of 1830 provided that its provisions should not "extend to any land which is reserved from sale by act of Congress or by order of the President, or which may have been appropriated for any purpose whatever." The pre-emption act of 1841 specially excluded from its operation "lands included in any reservation by any treaty, law, or proclamation of the President for any purpose." The general policy of the homestead and pre-emption laws from the inception of our public land laws forbade any settlement · upon the military or other government reservation, and all such settlers were, and now are, treated as trespass-

ers, and liable to prosecution for cutting timber thereon. Section 5388; Rev. St. U. S., as amended by Act June 4, 1888, c. 340, 25 Stat. 166 [U. S. Comp. St. 1901, p. 3649].

There is no pretense that the plaintiff had initiated any homestead or pre-emption claim to the land in question, or attempted to do so, and it seems as if his title were sought to be established either under the laws relating to trade and manufactures or the town site law. The act of Congress entitled "An act to repeal timber culture laws and for other purposes," approved March 3, 1891, 26 Stat. 1095, c. 561, extended the town site law to Alaska, and provided for entering land thereunder for purposes of trade or manufacture. Section 14 of that act [U. S. Comp. St. 1901, p. 1468], however, distinctly provides that the two preceding sections, authorizing the sale of public lands for trade or manufactures, shall not be so construed as to warrant the sale of any lands belonging to the United States which shall contain coal or the precious metals, or any town site, or which shall be occupied by the United States for public purposes, or which shall be reserved for such purposes.

Section 2393, Rev. St. U. S., provides that "the provisions of this chapter shall not apply to military or other reservations heretofore made by the United States." The chapter includes section 2387, which is specially extended to Alaska by section 11 of the act of March 3, 1891 [U. S. Comp. St. 1901, p. 1467]. The town site laws have never been held to permit settlement upon military reservations.

By the act of May 14, 1898 (30 Stat. 409, c. 299 [U. S. Comp. St. 1901, p. 1412]), the homestead law and the law permitting the location of railroad rights of way and terminals were extended to Alaska. The seventh section of the act, however, contains the usual clause:

"That this act shall not apply to any lands within the limits of any military, park, Indian, or other reservation, unless such right-of-way shall be provided for by act of Congress."

It will not be necessary to quote authorities upon the proposition that settlement and entry of a public military reservation cannot be made under the land laws of the United States. Crawford could not in 1900 initiate any claim of right, title, or possession by his entry on the reservation under charge of the military department. The permission given him by Capt. Abercrombie could not aid him, for that officer had no authority in that regard. Crawford was a mere trespasser, and his acts in felling and destroying the timber thereon were without authority of law, and gave him no preference right to the land. Speaking of just such a possession, Justice Field said, in Grisar v. McDowell, 4 Sawy. 597, Fed. Cas. No. 5,832: "Whoever took possession of any of the municipal lands over which the United States had thus exercised their power, held such lands at the pleasure of the government." Speaking of a similar condition in relation to a Mexican grant, the Supreme Court of the United States said:

"The land within the boundaries of the grant was not open to settlement under the pre-emption laws, and his occupation from 1856 to his eviction in 1862 was that of a trespasser, and did not originate any rights which the government was bound to respect." Hosmer v. Wallace, 97 U. S. 575, 24 L. Ed. 1130.

And this was the character of Crawford's possession. He was a mere trespasser at the will of the government, liable to be ejected without notice by the military authorities then in possession of the lands. He had not the shadow of a claim to the land, and could not initiate such a claim prior to the abandonment of the land on July 25, 1902.

Whatever fencing Crawford may have had in 1900, there is no claim or pretense that he had any such, or any other, boundary around the tract on July 25, 1902. Upon that date his small log stable, overgrown with brush, yet stood where he erected it in 1900, and constituted his only sign

of possession. He then made no attempt to locate his boundaries definitely by stakes, monuments, fences, or otherwise, and the defendants located on that tract without any knowledge of the extent of his claim other than as shown by the stable. Under this condition of the evidence, the land being unsurveyed, he must be limited to the land actually occupied by the stable. Havens v. Dale, 18 Cal. 359. Being uninclosed land, unmarked by boundaries, stakes, or fences, and not described in any way, private or official, and not in the actual use or occupancy of any one, the rule in Atherton v. Fowler, 96 U. S. 513, 24 L. Ed. 732, does not apply.

Counsel for plaintiff announce that they depend upon the ruling of this court in Walsh v. Ford, 1 Alaska, 146, as applicable to and determinative of this case. It can have no such force or effect. Speaking of the permit given by the military commander in that case, the court said:

"While the permit given by the commanding officer of the district of Alaska to Ford on May 25, 1900, conferred no rights as against the United States nor any title to the land, yet it affords some evidence of his peaceable entry and possession of both lots mentioned therein."

In that case Ford entered on the two lots while in a state of reservation. Thereafter and on August 13, 1900 while he was in possession and residing on the lots, the reservation was formally thrown open to settlement. Ford continued on the lots, with his dwelling house, stable, and other property. While he was in such open and notorious possession, and on April 1, 1901, the defendant first intruded upon one of the lots, and claimed possession. Counsel must see that it is a very different case from that at bar, and affords no ground of authority to support plaintiff's contention.

It is doubtful if the old, small, and almost worthless log stable in question is of sufficient character to justify the court in considering it any evidence of possession what-

ever. The court will, however, give it such a character, and will find for the plaintiff on that point for the land upon which it stands. Findings and judgment in accordance with these views will be entered. Judgment must be entered for Thompson and Furness, for they are clearly outside of plaintiff's claims, and against Burr and Waldron for the recovery of the stable in controversy and the land upon which it stands.